1  Stephen D. Raber (SBN 121958)
2  sraber@wc.com
   WILLIAMS & CONNOLLY LLP
3  680 Maine Avenue, SW
4  Washington, DC  20024
   Telephone: 202-434-5000
5  Facsimile: 202-434-5029

6
   *Attorneys for Defendant Mars, Incorporated*
7

8              UNITED STATES DISTRICT COURT
9              CENTRAL DISTRICT OF CALIFORNIA
10                    WESTERN DIVISION

11 | BRENT SCRUGGS, on behalf of | **Case No. 2:22-cv-05617** |
12 | himself and all others similarly situated, | |
13 |             *Plaintiff*, | **MARS'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS COMPLAINT** |
14 |     v. | |
15 | | |
16 | MARS, INCORPORATED, | Hearing Date: December 5, 2022 |
17 | | Time: 8:30 a.m. |
   |             *Defendant* | Place: Courtroom 10B |
18 | | Judge: Hon. John A. Kronstadt |

19
20
21
22
23
24
25
26
27
28

1

2

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................... i

TABLE OF AUTHORITIES ............................................................................ ii

INTRODUCTION ...........................................................................................1

FACTUAL BACKGROUND ............................................................................2

   A.  Congress and FDA Regulate Artificial Flavoring in Food. ............................2

   B.  Plaintiff's Complaint. ...............................................................................3

LEGAL STANDARD........................................................................................4

ARGUMENT ....................................................................................................5

I.    Federal Law Preempts Plaintiff's Claims...............................................5

  A.  The FDCA Expressly Preempts Plaintiff's Claims. .........................................6

  B.  The ALTOIDS® Label Complies with FDA Regulations. ...............................7

II.   The Safe Harbor Doctrine Bars Plaintiff's Claims........................................11

III.  Plaintiff Fails To State a Claim. .............................................................12

  A.  Plaintiff Fails Plausibly To Allege Deception.................................................12

  B.  Plaintiff Fails Plausibly To Allege a Warranty Claim. ...................................14

  C.  Plaintiff's Equitable Claims Must Be Dismissed Because He Has an
     Adequate Remedy
     at Law. ...................................................................................................15

IV.  Plaintiff Lacks Standing To Seek Injunctive Relief.......................................16

CONCLUSION ..............................................................................................16

1

# TABLE OF AUTHORITIES

2

## FEDERAL CASES

3

*Adams v. Starbucks Corp.*, 2020 WL 4196248 (C.D. Cal. July 9, 2020)................5

4

*Alvarez v. Chevron Corp.*, 656 F.3d 925 (9th Cir. 2011) ........................11

5

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)................................................4, 5

6

*Baltazar v. Apple, Inc.*, 2011 WL 3795013 (N.D. Cal. Aug. 26, 2011) .................12

7

*Beaver v. Tarsadia Hotels*, 816 F.3d 1170 (9th Cir. 2016) ........................5

8

*Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225 (9th Cir. 2019) ...................12

9

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)................................4

10

*Capaci v. Sports Research Corp.*, 445 F. Supp. 3d 607 (C.D. Cal. 2020) ...............6

11

*Carrea v. Dreyer's Grand Ice Cream, Inc.*, 475 F. App'x 113 (9th Cir. 2012) 10, 13

12

*Chae v. SLM Corp.*, 593 F.3d 936 (9th Cir. 2010) .......................................5

13

*Chuang v. Dr. Pepper Snapple Group*, 2017 WL 4286577 (C.D. Cal. Sept.

14

20, 2017) .........................................................................12

15

*City of New York v. FCC*, 486 U.S. 57 (1988)........................................6

16

*Cohen v. Apple Inc.*, 46 F.4th 1012 (9th Cir. 2022) ................................5

17

*Cordes v. Boulder Brands USA, Inc.*, 2018 WL 6714323 (C.D. Cal. Oct. 17,

18

2018) ...............................................................................16

19

*Culver v. Unilever U.S., Inc.*, 2021 WL 2943937 (C.D. Cal. June 14, 2021) .........13

20

*Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152 (9th Cir. 2012) .......................11

21

*Dvora v. Gen. Mills, Inc.*, 2011 WL 1897349 (C.D. Cal. May 16, 2011)...10, 12, 15

22

*Ebner v. Fresh, Inc.*, 838 F.3d 958 (9th Cir. 2016) .................................11

23

*Freeman v. Time, Inc.*, 68 F.3d 285 (9th Cir. 1995)................................12

24

*G&H Diversified Manufacturing v. Regreen Techs.*, 2021 WL 6618662

25

(C.D. Cal. Sept. 20, 2021).......................................................15

26

*Goldstein v. GM*, 2022 WL 484995 (S.D. Cal. Feb. 16, 2022) .........................15

27

28

MARS'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
COMPLAINT, CASE NO. 2:22-cv-05617

ii

*Hartwich v. Kroger Co.*, 2021 WL 4519019 (C.D. Cal. Sept. 20, 2021), appeal dismissed, 2022 WL 1401350 (9th Cir. Mar. 21, 2022) ........................14

*Hodges v. King's Hawaiian Bakery West*, 2021 WL 5178826 (N.D. Cal. Nov. 8, 2021) ........................................................................................5

*In re Quaker Oats Maple & Brown Sugar Instant Oatmeal Litigation*, 2017 WL 4676585 (C.D. Cal. Oct. 10, 2017)..............................6, 10, 11, 15

*Kennard v. Kellogg Sales Co.*, 2022 WL 4241659 (N.D. Cal. Sept. 14, 2022) ..............................................................................13, 14, 15

*Lam v. General Mills, Inc.*, 859 F. Supp. 2d 1097 (N.D. Cal. 2012) .......................6

*Lisner v. Sparc Group*, 2021 WL 6284158 (C.D. Cal. Dec. 29, 2021)..................15

*Matic v. U.S. Nutrition, Inc.*, 2019 WL 3084335 (C.D. Cal. Mar. 27, 2019)..........16

*McKinniss v. Gen. Mills, Inc.*, 2007 WL 4762172 (C.D. Cal. Sept. 18, 2007).......15

*Moore v. Trader Joe's Co.*, 4 F.4th 874 (9th Cir. 2021) .........................................13

*Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973 (C.D. Cal. 2013)........................13

*Pom Wonderful LLC v. Coca Cola Co.*, 2013 WL 543361 (C.D. Cal. Feb. 13, 2013) ..................................................................................11

*Schroeder v. United States*, 569 F.3d 956 (9th Cir. 2009).....................................15

*Shanks v. Jarrow Formulas, Inc.*, 2019 WL 7905745 (C.D. Cal. Dec. 27, 2019) ........................................................................................16

*Svensrud v. Frito-Lay North America, Inc.*, 2020 WL 8575056 (C.D. Cal. Dec. 21, 2020).................................................................................7

*TTing v. AT&T, 31*9 F.3d 1126 (9th Cir. 2003) .......................................................5

*Varela v. Walmart, Inc.*, 2021 WL 2172827 (C.D. Cal. May 25, 2021).......5, 13, 14

*Viggiano v. Hansen Nature Corp.*, 944 F. Supp. 2d 877 (C.D. Cal. 2013)..............6

*Weiss v. Trader Joe's Co.*, 2018 WL 6340758 (C.D. Cal. Nov. 20, 2018), aff'd, 838 F. App'x 302 (9th Cir. 2021) ...............................................5, 13, 14

MARS'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
COMPLAINT, CASE NO. 2:22-cv-05617

## STATE CASES

*Bourgi v. West Covina Motors*, 83 Cal. Rptr. 3d 758 (2008), *as modified on denial of reh'g* (Oct. 23, 2008) ....................................................5, 11, 12, 14, 15

*Cel-Tech Communications v. L.A. Cellular Tel. Co.*, 973 P.2d 527 (Cal. 1999) .................................................................................................................11

## OTHER AUTHORITIES

21 C.F.R. § 100.1(c)(4) ...........................................................................................6

21 C.F.R. § 101.22(i) ...........................................................................................2, 3

21 C.F.R. § 101.22(i)(2)...........................................................................1, 4, 7, 8, 11

21 C.F.R. § 101.22(i)(3)...................................................................................1, 4

21 C.F.R. § 101.22(i)(3)(i)...............................................................................9, 10

21 U.S.C. § 343 ........................................................................................................2

21 U.S.C. § 343-1(a) ...............................................................................................6

21 U.S.C. § 343-1(a)(3) ..........................................................................................6

21 U.S.C. § 343-1(a)(5) ..........................................................................................7

21 U.S.C. § 343(k) ..........................................................................................2, 6, 7

Cal. Health & Safety Code § 110100 ...................................................................12

H.R. Rep. No. 101–538 (1990), *reprinted in* 1990 U.S.C.C.A.N. 3336 ..................6

Nutrition Labeling and Education Act, Pub. L. No. 101-535, 104 Stat. 2353 (1990)................................................................................................................6

**INTRODUCTION**

The FDA permits the use of artificial flavoring in food.  FDA regulations specify in detail how manufacturers must declare such artificial flavoring in their food labels.  21 C.F.R. § 101.22(i)(2) & (3).  Mars complies with those regulations by placing the words "Artificially Flavored" before the word "CINNAMON" on the principal display panel of ALTOIDS® Curiously Strong Mints:



Compl. ¶ 15.

Inexplicably, Plaintiff alleges that "the 'Cinnamon' representation on the Product's label should have been accompanied by the word 'artificially flavored,' and that Mars should be held liable because "the Product's Cinnamon representations do not have this accompanying language."  Compl. ¶¶ 26, 28.  Plaintiff further alleges that this labeling "lead[s] reasonable consumers to believe that the Product contains cinnamon," *id.* ¶ 2, notwithstanding the presence of the words "Artificially Flavored" on the front of the label, and the absence of any reference to cinnamon in the ingredients list on the back of the label.

The Complaint should be dismissed with prejudice.  First, federal law preempts Plaintiff's claims because they would impose labeling requirements that are "not identical" to federal law.  Second, California's safe harbor doctrine bars the claims because the Sherman Law expressly permits the use of artificial flavors

and specifies the manner in which they shall be declared in the labeling, and Mars complies with those legal requirements.  Third, the Complaint fails to state a claim because no reasonable consumer would be deceived into believing that ALTOIDS® contain natural cinnamon when the front of the label states the exact opposite, i.e., that the product contains "Artificially Flavored" cinnamon, and the ingredients list on the back of the label does not include any reference to cinnamon, but refers instead to "ARTIFICIAL FLAVORS."  Furthermore, Plaintiff's equitable claims should be dismissed because he has an adequate remedy at law.  Finally, Plaintiff lacks standing to seek injunctive relief because he can ascertain whether ALTOIDS® contain natural cinnamon simply by looking at the front of the label and seeing the words "Artificially Flavored" immediately preceding the word "CINNAMON."

## FACTUAL BACKGROUND

### A.    Congress and FDA Regulate Artificial Flavoring in Food.

The Food, Drug, and Cosmetic Act ("FDCA") prohibits the sale of "misbranded" foods.  21 U.S.C. § 343.  It delegates to FDA responsibility to establish and promulgate labeling regulations to permit the lawful use of "artificial flavoring."  21 U.S.C. § 343(k).  Thus, labeling of artificial flavoring in food is governed by 21 C.F.R. § 101.22(i).  According to that provision,

> (i) If the label, labeling, or advertising of a food makes any direct or indirect representations with respect to the primary recognizable flavor(s), by word, vignette, e.g., depiction of a fruit, or other means, or if for any other reason the manufacturer or distributor of a food wishes to designate the type of flavor in the food other than through the statement of ingredients, such flavor shall be considered the characterizing flavor and shall be declared in the following way:

> . . .

> (2) If the food contains any artificial flavor which simulates, resembles or reinforces the characterizing flavor, the name of the food

on the principal display panel or panels of the label shall be accompanied by the common or usual name(s) of the characterizing flavor, in letters not less than one-half the height of the letters used in the name of the food and the name of the characterizing flavor shall be accompanied by the word(s) "artificial" or "artificially flavored", in letters not less than one-half the height of the letters in the name of the characterizing flavor, e.g., "artificial vanilla", "artificially flavored strawberry", or "grape artificially flavored."

*Id.*

## B.   Plaintiff's Complaint.

Plaintiff alleges that Mars violated California's consumer protection laws by labeling ALTOIDS® Curiously Strong Mints ("ALTOIDS®") with the word "CINNAMON" and a depiction of cinnamon sticks.  According to Plaintiff, the ALTOIDS® front label misrepresents the product and results in various types of consumer fraud, unjust enrichment, and breach of an express and implied warranty.  Compl. ¶¶ 48–97.  Specifically, Plaintiff alleges that the depiction of cinnamon sticks combined with the word "CINNAMON" (together, the "Cinnamon Representations") deceives consumers into believing that ALTOIDS® contain cinnamon.  Compl. ¶ 2.  Plaintiff claims the Cinnamon Representations are false and deceptive because ALTOIDS® do not contain natural cinnamon.  However, as illustrated below, the front label explicitly states that ALTOIDS® are "Artificially Flavored."  The back label similarly states that the product is "MADE OF: . . . ARTIFICIAL FLAVORS . . ."  And the ingredients list ("MADE OF") makes no reference at all to cinnamon:

Mars's Request for Judicial Notice ("RJN") Ex. A.

Plaintiff does not (and cannot) allege that the words "Artificially Flavored" fail to comply with the requirements of 21 C.F.R. § 101.22(i)(2) & (3). Instead, Plaintiff inexplicably pretends that the words "Artificially Flavored" do not exist on the label, Compl. ¶ 28, even though they appear in plain sight. Plaintiff then claims that it would be reasonable for his imaginary consumer to (1) look at the ALTOIDS® label, (2) see the words "Artificially Flavored" on the front label, (3) see from the ingredients list that the product is "MADE OF: . . . ARTIFICIAL FLAVORS . . .", (4) not see any reference to cinnamon in the ingredients list, and (5) still conclude that ALTOIDS® contain natural cinnamon.

Plaintiff asserts that if he and the putative class members had been aware that ALTOIDS® do not contain natural cinnamon, they would not have purchased ALTOIDS® or would have paid less for them. Compl. ¶ 34. Plaintiff seeks injunctive relief, restitution, compensatory damages, treble damages, punitive damages, and attorneys' fees. Compl. (Request for Relief).

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v.*

1   *Iqbal*, 556 U.S. 662, 678 (2009).  A complaint fails where it pleads facts that are

2   "merely consistent with" a defendant's liability." *Id.*

3       Courts determine plausibility by looking at the context of the claim as well

4   as drawing on their own "common sense."  *Id.* at 679.  As a result, courts can

5   "grant a motion to dismiss based upon a review of the disputed packaging." *Adams*

6   *v. Starbucks Corp.*, 2020 WL 4196248, at *3 (C.D. Cal. July 9, 2020); *see also*

7   *Weiss v. Trader Joe's Co.*, 2018 WL 6340758, at *4 (C.D. Cal. Nov. 20, 2018),

8   *aff'd*, 838 F. App'x 302 (9th Cir. 2021).  Courts can "determine, as a matter of law,

9   that the alleged violations of the UCL, FAL, and CLRA are simply not plausible."

10  *Hodges v. King's Hawaiian Bakery W.*, 2021 WL 5178826, at *6 (N.D. Cal. Nov.

11  8, 2021).  Furthermore, "there have been an ever-increasing number of cases in

12  which a motion to dismiss was found to be appropriately granted where the issue

13  was whether a product label would be deceptive or misleading to a reasonable

14  consumer." *Varela v. Walmart, Inc.*, 2021 WL 2172827, at *4 (C.D. Cal. May 25,

15  2021) (collecting cases).

16                                **ARGUMENT**

17  **I.     Federal Law Preempts Plaintiff's Claims.**

18      Federal preemption "'can occur in one of several ways: express, field, or

19  conflict preemption.'" *Cohen v. Apple Inc.*, 46 F.4th 1012, 1027 (9th Cir. 2022)

20  (quoting *Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1178 (9th Cir. 2016).  Express

21  preemption occurs when Congress "indicate[s] its intent to displace state law

22  through express language." *Chae v. SLM Corp.*, 593 F.3d 936, 942 (9th Cir.

23  2010).  Conflict preemption occurs when state law "stands as an obstacle to the

24  accomplishment and execution of the full purposes and objectives of Congress."

25  *Ting v. AT&T*, 319 F.3d 1126, 1136 (9th Cir. 2003) (citation omitted).  "Under the

26  doctrine of implied conflict preemption, '[t]he statutorily authorized regulations of

27  an agency will pre-empt any state or local law that conflicts with such regulations

28

1  or frustrates the purposes thereof.'"  *Cohen*, 46 F.4th at 1028 (alteration in

2  original) (quoting *City of New York v. FCC*, 486 U.S. 57, 63 (1988)).

3  **A.      The FDCA Expressly Preempts Plaintiff's Claims.**

4  In 1990, Congress enacted the Nutrition Labeling and Education Act

5  ("NLEA"), Pub. L. No. 101-535, 104 Stat. 2353 (1990), which amended the FDCA

6  to "establish *uniform national standards* for the nutritional claims and the required

7  nutrient information displayed on food labels."  *Lam v. Gen. Mills, Inc.*, 859 F.

8  Supp. 2d 1097, 1102 (N.D. Cal. 2012) (emphasis added; quotations omitted).  The

9  NLEA was enacted to "clarify and . . . strengthen the [FDA's] legal authority to

10 require nutrition labeling on foods, and to establish the circumstances under which

11 claims may be made about nutrients in foods."  *Capaci v. Sports Rsch. Corp.,* 445

12 F. Supp. 3d 607, 618 (C.D. Cal. 2020) (quoting H.R. Rep. No. 101–538, (1990),

13 *reprinted in* 1990 U.S.C.C.A.N. 3336, 3337) (alterations in original).    This

14 regulatory scheme is comprehensive and contains uniform food labeling

15 requirements.  *In re Quaker Oats Maple & Brown Sugar Instant Oatmeal Litig.*,

16 2017 WL 4676585, at *4 (C.D. Cal. Oct. 10, 2017).

17 The NLEA contains several express preemption provisions.  *See* 21 U.S.C. §

18 343-1(a).  These provisions preempt state law requirements "not identical to"

19 FDA-regulated food labeling.  *See id.*  "'[N]ot identical to . . . means that the State

20 requirement directly or indirectly imposes obligations or contains provisions

21 concerning the composition or labeling' that are 'not imposed or contained in the

22 applicable provision[s].'"  *Lam*, 859 F. Supp. 2d at 1102 (alterations in original)

23 (quoting 21 C.F.R. § 100.1(c)(4)).

24 Among other things, the NLEA expressly preempts state law requirements

25 not identical to FDA regulations governing the disclosure of artificial flavoring.

26 *See* 21 U.S.C. § 343-1(a)(3) (citing 21 U.S.C. § 343(k) (artificial flavoring)).  *See*

27 *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 888 (C.D. Cal. 2013)

28

MARS'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
COMPLAINT, CASE NO. 2:22-cv-05617

6

(Section 343(k) preempts all state laws "'directly or indirectly'" from establishing "'any requirement for the labeling of food of the type required by section ... 343(k) of this title that is not identical to the requirement of such section.'" (alteration in original) (quoting 21 U.S.C. § 343-1(a)(5)).

Plaintiff's claims depend on this Court finding that the artificial flavoring in ALTOIDS® was not properly disclosed on the label. Accordingly, they must be predicated on an FDA violation, which the Complaint does not plausibly allege. Indeed, as demonstrated below, the product labeling complies with FDA regulations. Plaintiff's attempt to require the disclosure of artificial flavoring in a way that he prefers would impose an obligation not identical to FDA regulations. "Because state-law labeling requirements must be identical to the requirements under the FDCA in order to avoid preemption . . . Plaintiff's failure to adequately allege a violation of the FDCA requires dismissal." *Svensrud v. Frito-Lay N. Am., Inc.*, 2020 WL 8575056, at *4 (C.D. Cal. Dec. 21, 2020).

**B.    The ALTOIDS® Label Complies with FDA Regulations.**

The ALTOIDS® label complies with 21 C.F.R. § 101.22(i)(2) in all respects. The text of this regulation states:

(i) If the label, labeling, or advertising of a food makes any direct or indirect representations with respect to the primary recognizable flavor(s), by word, vignette, e.g., depiction of a fruit, or other means, or if for any other reason the manufacturer or distributor of a food wishes to designate the type of flavor in the food other than through the statement of ingredients, such flavor shall be considered the characterizing flavor and shall be declared in the following way:

. . .

(2) If the food contains any artificial flavor which simulates, resembles or reinforces the characterizing flavor, the name of the food on the principal display panel or panels of the label shall be accompanied by the common or usual name(s) of the characterizing flavor, in letters not less than one-half the height of the letters used in

the name of the food and the name of the characterizing flavor shall be accompanied by the word(s) "artificial" or "artificially flavored", in letters not less than one-half the height of the letters in the name of the characterizing flavor, e.g., "artificial vanilla", "artificially flavored strawberry", or "grape artificially flavored."

*Id.*

*First*, according to subsection (i)(2), "the name of the food on the principal display panel"—i.e., "MINTS"—"shall be accompanied by the common or usual name(s) of the characterizing flavor"—i.e., "CINNAMON"—"in letters not less than one-half the height of the letters used in the name of the food." 21 C.F.R. § 101.22(i)(2). Here, the label complies with that requirement because the word "CINNAMON" appears below the word "MINTS" in similar-sized (if not slightly larger) font:



RJN Ex. A.

*Second*, "the name of the characterizing flavor"—i.e., "CINNAMON"— "shall be accompanied by the word(s) 'artificial' or 'artificially flavored', in letters not less than one-half the height of the letters in the name of the characterizing flavor" 21 C.F.R. § 101.22(i)(2). Here, the label complies with that requirement because the words "Artificially Flavored" appear to the left of the word "CINNAMON" and the letters in "Artificially Flavored" are greater than one-half the height of the letters in the word "CINNAMON":

RJN Ex. A.

*Third*, "Artificially Flavored" precedes the word "CINNAMON" on the label, in accordance with the express language of 21 C.F.R. § 101.22(i)(3)(i), which provides as follows:

> (3) Wherever the name of the characterizing flavor appears on the label (other than in the statement of ingredients) so conspicuously as to be easily seen under customary conditions of purchase, the words prescribed by this paragraph shall immediately and conspicuously precede or follow such name, without any intervening written, printed, or graphic matter, <u>except</u>:
>
> **(i) Where the characterizing flavor and a trademark or brand are presented together, other written, printed, or graphic matter that is a part of or is associated with the trademark or brand may intervene if the required words are in such relationship with the trademark or brand as to be clearly related to the characterizing flavor[.]**

*Id.* (emphases added).

Here, the word "CINNAMON" is "presented together" with the ALTOIDS® trademark and "other written, printed, or graphic matter that is a part of or is associated with the trademark or brand." 21 C.F.R. § 101.22(i)(3)(i).  Accordingly,

the regulation expressly permits graphic material "to intervene" between the words "Artificially Flavored" and "CINNAMON":



RJN Ex. A.

"[B]oth the FDA and courts have accepted various permutations of 'artificial,' 'natural,' and 'flavor,'" and as a result, courts "have deemed preempted . . . claims based on a range of different labeling options that convey the same basic idea." *In re Quaker Oats*, 2017 WL 4676585, at *7. Thus, disclosing artificial flavors in a product can be as simple as using the word "artificial" or the words "artificially flavored" without integrating the characterizing flavor into the phrase. *Id.* As a result, even if there were no graphic material on the ALTOIDS® label, the words "Artificially Flavored" would not need to be on the same line as the word "CINNAMON." *Id.*; *see Carrea v. Dreyer's Grand Ice Cream, Inc.*, 475 F. App'x 113 (9th Cir. 2012); *Dvora v. Gen. Mills, Inc.*, 2011 WL 1897349 (C.D. Cal. May 16, 2011).

By asking the Court to enjoin Mars from making the Cinnamon Representations on the label, Compl. ¶ 26, Plaintiffs "'"seek[s] to enjoin exactly what federal law expressly permits."'" *In re Quaker Oats*, 2017 WL 4676585, at *5 (citation omitted). Plaintiff inexplicably overlooks the words "Artificially Flavored," in an attempt to impose his own label requirements contrary to the express preemption provision that any such requirement be "identical" to the federal regulation. *See Dvora*, 2011 WL 1897349, at *6. Because all of Plaintiff's

claims are predicated on representations expressly required by the FDA, the claims are squarely preempted by federal law. *In re Quaker Oats*, 2017 WL 4676585, at *7. Specifically, "Plaintiffs' *claims*, not the statutes themselves, are preempted because Defendant is in compliance with the FDCA and Plaintiffs seek causes of action on the basis of this conduct." *Id.* at *6.

## II.   The Safe Harbor Doctrine Bars Plaintiff's Claims.

To ensure that "courts [do] not use the unfair competition law to condemn actions the Legislature permits," the California Supreme Court has articulated what is known as the "safe harbor doctrine." *See Cel-Tech Commc'ns v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 541 (Cal. 1999). "If the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination." *Id.* In such cases, the Legislature has created a "safe harbor" for the conduct at issue, and "plaintiff[] may not use the general unfair competition law to assault that harbor." *Id.* The safe harbor doctrine applies to all the California unfair competition statutes, including the UCL, CLRA, and FAL. *See Ebner v. Fresh, Inc.*, 838 F.3d 958, 963–64 (9th Cir. 2016). Courts have thus repeatedly rejected attempts to impose duties under the UCL, CLRA, or FAL that are contradicted by legislative mandates on the same issue. *See, e.g.*, *Pom Wonderful LLC v. Coca Cola Co.*, 2013 WL 543361, at *5 (C.D. Cal. Feb. 13, 2013) (UCL and FAL); *Alvarez v. Chevron Corp.*, 656 F.3d 925, 933–34 (9th Cir. 2011) (UCL and CLRA); *Bourgi v. W. Covina Motors*, 83 Cal. Rptr. 3d 758, 764–65 (2008), *as modified on denial of reh'g* (Oct. 23, 2008) (CLRA). In such cases, the safe harbor doctrine renders the allegedly unfair conduct "'fair' as a matter of law." *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1166 (9th Cir. 2012).

Federal law expressly permits product labels to use the name and depiction of a characterizing flavor, even if it is artificially flavored. 21 C.F.R. § 101.22(i)(2); *see also Dvora*, 2011 WL 1897349, at *4. So too does state law

because the Sherman Law adopts all FDA regulations as state regulations—including the FDA's food labeling regulations.  *See* Cal. Health & Safety Code § 110100.  For the same reason, the Sherman Law also expressly permits artificially flavored cinnamon to be declared in labeling in the manner described above. *Supra* pp 7-10.  Thus, California expressly permits Mars to use artificially flavored cinnamon in ALTOIDS® and renders the representations on the label "fair as a matter of law," whether under the UCL, CLRA, or FAL.

**III.   Plaintiff Fails To State a Claim.**

   **A.   Plaintiff Fails Plausibly To Allege Deception.**

   Plaintiff's claims should be dismissed because the label is not likely to deceive a reasonable consumer.  To prove deception under the UCL, CLRA, and FAL, Plaintiff must plausibly allege "'that members of the public are likely to be deceived.'"  *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019) (citation omitted).  This "reasonable consumer test" "requires more than a mere possibility that [the] label 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.'"  *Id.* (citation omitted).  Instead, it "requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'"  *Id.* at 1229 (citation omitted); *see Chuang v. Dr. Pepper Snapple Grp.*, 2017 WL 4286577, at *6 (C.D. Cal. Sept. 20, 2017) (dismissing claim for failure to make a cognizable claim that reasonable consumer could be deceived); *Baltazar v. Apple, Inc.*, 2011 WL 3795013, at *3 (N.D. Cal. Aug. 26, 2011) (same); *see also Freeman v. Time, Inc.*, 68 F.3d 285, 289–90 (9th Cir. 1995) (affirming dismissal of claim on same grounds). A reasonable consumer is the "ordinary consumer," not the "least sophisticated" one.  *Weiss v. Trader Joe's Co.*, 2018 WL 6340758, at *4 (C.D. Cal. Nov. 20, 2018), *aff'd*, 838 F. App'x 302 (9th Cir. 2021).

Courts have consistently held that it is not reasonable for a consumer to maintain beliefs affirmatively dispelled by a product's front label, particularly when there is no affirmative misrepresentation. *Carrea*, 475 F. App'x at 115 (holding that no reasonable consumer is likely to believe that "Original Vanilla" refers to a natural ingredient when that term is adjacent to the phrase, "Artificially Flavored"); *see also Varela*, 2021 WL 2172827, at *6 ("no reasonable consumer would believe that the Product *only* contains Vitamin E oil, because the front label clearly states that the Product includes keratin").   Furthermore, if there is ambiguity on the front of such label, a reasonable consumer would be expected to look on the ingredient list. *See Moore v. Trader Joe's Co.*, 4 F.4th 874, 882–83 (9th Cir. 2021) (affirming the district court where the court "concluded that, as a matter of law, other available information . . . would quickly dissuade a reasonable consumer" from an unreasonable belief when the product packaging was ambiguous); *see also Culver v. Unilever U.S., Inc.*, 2021 WL 2943937, at *1 (C.D. Cal. June 14, 2021) (holding that the label was not "so misleading that a reasonable consumer – who had a question . . . would not be expected to look at the full packaging for the answer, which was clearly and correctly provided on the rear label"); *Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973, 980 (C.D. Cal. 2013); *Kennard v. Kellogg Sales Co.*, 2022 WL 4241659, at *5 (N.D. Cal. Sept. 14, 2022).

Here, the front of the label clearly states, "Artificially Flavored."  Those words appear to the left of the word "CINNAMON" and the depiction of cinnamon sticks.  No reasonable consumer would read the words "Artificially Flavored" and nonetheless assume that the product contains natural cinnamon.  That plain and simple disclosure should end the inquiry.  Yet even if there were any ambiguity, the back of the packaging makes it clear that the product is "MADE OF: . . . ARTIFICIAL FLAVORS . . ." and that natural cinnamon is not an ingredient:

RJN Ex. A.

Since it is not plausible that the label would deceive a reasonable consumer, Plaintiff fails to state a claim under the UCL, CLRA, and FAL. And "[b]ecause Plaintiff's claims for breach of express warranty, implied warranty of merchantability, and unjust enrichment are premised on the same allegations, they fail as well." *Weiss*, 2018 WL 6340758, at *2; *see also Hartwich v. Kroger Co.*, 2021 WL 4519019, at *6 (C.D. Cal. Sept. 20, 2021), *appeal dismissed*, 2022 WL 1401350 (9th Cir. Mar. 21, 2022); *Varela*, 2021 WL 2172827, at *9 (holding that the plaintiff's warranty claims failed because there was no plausible deception to underly the plaintiff's UCL, CLRA, and FAL claims).

**B.      Plaintiff Fails Plausibly To Allege a Warranty Claim**.

Additionally, Plaintiff fails to plead an express or implied warranty claim because the label contains no "specific and unequivocal" statement that the cinnamon is naturally flavored. *Kennard*, 2022 WL 4241659, at *7 (N.D. Cal. Sept. 14, 2022). Nowhere on the label does it say that the product contains natural cinnamon. Although Plaintiff alleges that the Cinnamon Representations create an express warranty that ALTOIDS® contain cinnamon, Compl. ¶ 77, courts have found that when a product's packaging represents the characterizing flavor, it is simply an indication of the product's flavor, not its composition. *In re Quaker*

*Oats*, 2017 WL 4676585, at *8 (citing *Dvora*, 2011 WL 1897349, at *9); *McKinniss v. Gen. Mills, Inc.*, 2007 WL 4762172, at *5 (C.D. Cal. Sept. 18, 2007)).  Consequently, "[b]ecause the express warranty claim fails as a matter of law, so does plaintiff's implied warranty claim." *Kennard*, 2022 WL 4241659, at *8.

### C.    Plaintiff's Equitable Claims Must Be Dismissed Because He Has an Adequate Remedy at Law.

"[E]quitable relief is not appropriate where an adequate remedy exists at law." *Schroeder v. United States*, 569 F.3d 956, 963 (9th Cir. 2009).  In *Sonner v. Premier Nutrition Corp.*, the Ninth Circuit held that this "federal equitable principle[]" applies to California equitable claims, and that under this principle, a plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm." 971 F.3d 834, 843–44 (9th Cir. 2020).  On that basis, *Sonner* affirmed dismissal of equitable UCL, FAL, and CLRA claims because the plaintiff had asserted a CLRA claim for damages, meaning she had an adequate remedy at law.  *See id.* at 837–38, 844–45.  Since *Sonner*, numerous courts have dismissed UCL, FAL, unjust enrichment, and equitable CLRA claims where plaintiffs also seek damages at law and fail to include any substantive allegations that they lack an adequate legal remedy.  *E.g.*, *Goldstein v. GM*, 2022 WL 484995, at *4–6 (S.D. Cal. Feb. 16, 2022); *Lisner v. Sparc Grp.*, 2021 WL 6284158, at *7–8 (C.D. Cal. Dec. 29, 2021).  That is the case here, where the complaint alleges claims for breach of express and implied warranty, fraud, and CLRA damages, (Compl. ¶¶ 48–97), requests "economic, monetary, actual, consequential, compensatory, and treble damages," as well as punitive damages, (Compl. 22), and fails to allege that money damages are insufficient to remedy his alleged injuries.  And, as explained below, Plaintiff lacks standing to seek

injunctive relief. Accordingly, Plaintiff has an adequate remedy at law, and the Court should dismiss all of his equitable claims.

**IV.    Plaintiff Lacks Standing To Seek Injunctive Relief.**

Plaintiff lacks standing to seek injunctive relief because he cannot show "a sufficient likelihood that he will again be wronged in a similar way." *Cordes v. Boulder Brands USA, Inc.*, 2018 WL 6714323, at *3 (C.D. Cal. Oct. 17, 2018). In *Davidson v. Kimberly-Clark Corp.*, the Ninth Circuit held that an allegedly deceived consumer can establish the threat of future harm if the labeling makes false or misleading claims, and the plaintiff is left to wonder whether he can rely on the product's advertising or labeling in the future. 889 F.3d 956, 970 (9th Cir. 2018). As numerous district courts applying *Davidson* have recognized, this boils down to "situations where the plaintiff could not easily discover whether a previous misrepresentation had been cured *without first buying the product at issue*." *Cordes*, 2018 WL 6714323, at *4 (emphasis added); *see also Cimoli*, 546 F. Supp. 3d at 906–08; *Matic v. U.S. Nutrition, Inc.*, 2019 WL 3084335, at *8 (C.D. Cal. Mar. 27, 2019); *Shanks v. Jarrow Formulas, Inc.*, 2019 WL 7905745, at *5 (C.D. Cal. Dec. 27, 2019).

Plaintiff cannot plausibly contest the accuracy of the "Artificially Flavored" disclosure on the front label or corresponding ingredient list. He knows that he can determine whether ALTOIDS® are artificially flavored by looking at either side of the label. *Matic* 2019 WL 3084335, at *8. Accordingly, he can readily ascertain whether ALTOIDS® are still artificially flavored *before* deciding whether to purchase them again and thus lacks standing to seek injunctive relief.

**CONCLUSION**

For the foregoing reasons, Mars respectfully requests that the Court dismiss Plaintiff's Complaint with prejudice.

1    Dated:  October 14, 2022                    Respectfully submitted,

2                                                By:  */s/Stephen D. Raber*

3                                                Stephen D. Raber (SBN 121958)

4                                                sraber@wc.com
                                                 WILLIAMS & CONNOLLY LLP

5                                                680 Maine Avenue, SW

6                                                Washington, DC  20024
                                                 Telephone: 202-434-5000

7                                                Facsimile: 202-434-5029

8
                                                 *Attorneys for Defendant Mars,*
9                                                *Incorporated*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MARS'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
COMPLAINT, CASE NO. 2:22-cv-05617

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on October 14, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

Robert Abiri                    abiri@cd-lawyers.com

Dated:  October 14, 2022                    Respectfully submitted,

By:  */s/Stephen D. Raber*
Stephen D. Raber (SBN 121958)
sraber@wc.com
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, SW
Washington, DC  20024
Telephone: 202-434-5000
Facsimile: 202-434-5029

*Attorneys for Defendant Mars, Incorporated*