UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:22-cv-05617-JAK (AFMx) | Date | May 22, 2023 |
|---|---|---|---|
| Title | Brent Scruggs v. Mars, Incorporated | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
|---|---|

| T. Jackson-Terrell | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:**    **(IN CHAMBERS) ORDER RE MARS'S MOTION TO DISMISS COMPLAINT (DKT. 14)**

**I.    Introduction**

On August 9, 2022, Brent Scruggs ("Plaintiff") brought this putative class action against Mars, Inc. ("Defendant") for the alleged false and deceptive labeling and advertising of its ALTOIDS® Cinnamon Mints (the "Product"). Dkt. 1 ("Complaint"). The Complaint advances the following causes of action: (1) violation of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*[1]; (2) violation of the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.*; (3) violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; (4) breach of express warranty; (5) breach of implied warranty; and (6) quasi contract/unjust enrichment/restitution. *Id.* ¶¶ 48-97.

On October 14, 2022, Defendant filed a Motion to Dismiss Complaint (Dkt. 14, the "Motion") and a request for judicial notice (Dkt. 15, the "RFN"). On November 14, 2022, Plaintiff filed an opposition to the Motion. Dkt. 17 (the "Opposition"). On November 21, 2022, Defendant filed a reply in support of the Motion. Dkt. 18 (the "Reply").

A hearing on the Motion was held on January 23, 2023. For the reasons stated in this Order, the Motion is **GRANTED IN PART AND DENIED IN PART**.

**II.    Factual Background**

    **A.    The Parties**

The Complaint alleges that Plaintiff is a citizen of California. Dkt. 1 ¶ 9. Plaintiff brings this action on his own behalf and on behalf of the following putative classes:

**California Class**

---

[1]  This claim is brought on behalf of the putative California Consumer Subclass, as defined in the Factual Background. All other claims are brought on behalf of the putative California Class, as defined in the Factual Background.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:22-cv-05617-JAK (AFMx) | Date | May 22, 2023 |
|----------|--------------------------|------|--------------|
| Title | Brent Scruggs v. Mars, Incorporated | | |

All persons who purchased the Product in the state of California within the applicable statute of limitations period.

**California Consumer Subclass**
All persons who purchased Product in the state of California, for personal, family, or household purposes, within the applicable statute of limitations period.

*Id.* ¶ 38.

It is alleged that Defendant is a Delaware corporation whose principal place of business is in Virginia. *Id.* ¶ 11. It is alleged that Defendant is responsible for manufacturing, marketing, labeling, advertising and selling the Product. *Id.* ¶ 12.

B.      Allegations in the Complaint

The Complaint alleges that Defendant engages in false and deceptive practices in the marketing and sale of the Product. *Id.* ¶ 1. It is alleged that featuring images of cinnamon sticks in connection with the Product and use of the word "CINNAMON" (collectively, the "Cinnamon Representations") both collectively and individually, causes reasonable consumers to believe that the Product contains cinnamon. *Id.* ¶ 2. It is then alleged that the Product does not contain any cinnamon. *Id.* ¶ 3.

It is alleged that, in or around March 2022, Plaintiff purchased the Product at a Walmart retail location in Torrance, California. *Id.* ¶ 9. It is alleged that, because the Plaintiff and putative class members reasonably relied on the Cinnamon Representations when purchasing the product, they would not have purchased the Product, or would only have done so for a significantly lower price, if they had known that the Product did not contain Cinnamon. *Id.* ¶¶ 4-5, 9. It is alleged that reasonable consumers expect cinnamon in the Product not only because of the representations, but also because similar products that actually contain cinnamon make similar representations. *Id.* ¶¶ 19-23. In support for the contention as to what reasonable consumers would have concluded, the Complaint alleges that the label violates United States Food and Drug Administration ("FDA") regulations because it does not represent the cinnamon as "artificial cinnamon," "artificially flavored cinnamon," or "cinnamon artificially flavored." *Id.* ¶¶ 24-28.

It is further alleged that Plaintiff regularly shops at stores where the Product is sold and would purchase the Product in the future if it actually contained cinnamon. *Id.* ¶ 10. It is alleged that Plaintiff lacks personal knowledge as to Defendant's specific business practices relating to the Product. *Id.* It is alleged that this uncertainty, coupled with Plaintiff's desire to purchase the Product, is an ongoing injury that warrants an injunction prohibiting Defendant from making the alleged misleading representations. *Id.* It is further alleged that putative class members will be injured by continuing to purchase the Product due to their reasonable beliefs that the Product contains cinnamon. *Id.*

C.      Relief Sought

The Complaint seeks declaratory relief, injunctive relief, restitution, damages, costs, attorney's fees and pre-judgment interest. Dkt. 1 at 22-23. The Complaint also seeks certification of the class, appointment

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:22-cv-05617-JAK (AFMx) | Date | May 22, 2023 |
|---|---|---|---|
| Title | Brent Scruggs v. Mars, Incorporated | | |

of Plaintiff as class representative and appointment of Plaintiff's counsel as class counsel. *Id.* at 22.

**III.    Request for Judicial Notice**

A.    Legal Standards

"[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007); *see also Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001).

Fed. R. Evid. 201(b) provides that a court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Consideration of such materials ensures that "allegations that contradict matters properly subject to judicial notice or by exhibit" are not simply "accept[ed] as true" in connection with a motion to dismiss. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A court may take judicial notice of a wide range of records, including public records, government documents, judicial opinions, municipal ordinances, newspaper and magazine articles, and the contents of websites. *See, e.g. Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 259 n.2 (9th Cir. 2013); *Tollis, Inc. v. Cnty. of San Diego*, 505 F.3d 935, 938 n.1 (9th Cir. 2007); *United States v. Chapel*, 41 F.3d 1338, 1342 (9th Cir. 1994); *Heidelberg USA, Inc. v. PM Lithographers, Inc.*, No. CV 17-02223-AB (AJWx), 2017 WL 7201872 at *2-3 (C.D. Cal. Oct. 19, 2017); *United States, ex rel. Modglin v. DJO Glob., Inc.*, 114 F.Supp.3d 993, 1008 (C.D. Cal. 2015).

Even if a court takes judicial notice as to a record, it must distinguish between undisputed and disputed matters within that record. *Lee*, 250 F.3d at 689-90. For example, "when a court takes judicial notice of another court's opinion, it may do so 'not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.' " *Id.* at 690 (quoting S. *Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426-27 (3rd Cir. 1999)).

B.    Defendant's RFN

In the RFN, Defendant seeks judicial notice of images of the front and back of the Product container, which are attached as Exhibit A to the RFN. Dkt. 15-2 at 2. The image of the front of the container is included in the Complaint; the image of the back of the container is not. Both the front and back of the label are material to the causes of action. Plaintiff does not object to the RFN or the authenticity of the images. Therefore, the RFN is **GRANTED**. Judicial notice is taken of the following images:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:22-cv-05617-JAK (AFMx) | Date | May 22, 2023 |
|---|---|---|---|
| Title | Brent Scruggs v. Mars, Incorporated | | |



This image of the front of the container is from the Complaint at ¶ 15. The image below of the back of the container is taken from the RFN.



**IV.    Analysis**

A.    Legal Standards

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:22-cv-05617-JAK (AFMx) | Date | May 22, 2023 |
|---|---|---|---|
| Title | Brent Scruggs v. Mars, Incorporated | | |

Fed. R. Civ. P. 8(a) provides that a "pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must state facts sufficient to show that a claim for relief is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint need not include detailed factual allegations, but must provide more than a "formulaic recitation of the elements of a cause of action." *Id.* at 555. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and internal quotation marks omitted).

A party may move to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Dismissal is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support one. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). In considering a motion to dismiss, the allegations in the challenged complaint are deemed true and must be construed in the light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). However, a court need not " 'accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.' " *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

If a motion to dismiss is granted, the court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Although this policy is to be applied "with extreme liberality," *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (citation omitted), allowing leave to amend is inappropriate in circumstances where litigants have failed to cure previously identified deficiencies, or where an amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Allen v. City of Beverly Hills*, 911 F.2d 367, 374 (9th Cir. 1990).

      B.    Application

          1.    <u>Preemption of California Statutory Claims</u>

               a)    Legal Standards

The Food Drug and Cosmetics Act ("FDCA") established a comprehensive regulatory system to ensure both food safety and proper labeling that would not cause confusion among consumers. 21 U.S.C. § 341 *et seq*. Congress amended the FDCA through the Nutrition Labeling and Education Act of 1990 ("NLEA"). The FDCA, as amended by the NLEA, expressly preempts state laws to the extent they vary from federal law, by providing that "no State . . . may directly or indirectly establish . . . any requirement for the labeling of food . . . that is not identical to" the requirements of the FDCA. 21 U.S.C. § 343-1(a)(3). A state regulation is "not identical to" a federal regulation if it imposes any obligation that differs from those specifically imposed by or within the applicable provision, including any implementing regulation. 21 C.F.R. § 100.1(c)(4)(ii). Under the NLEA, state consumer protection laws are preempted when they are used to impose requirements that conflict, or are otherwise inconsistent, with the requirements of the FDCA. *Durnford v. MusclePharm Corp.*, 907 F.3d 595, 601–03 (9th Cir. 2018); *Hadley v. Kellogg Sales Co.*, 273 F.Supp.3d 1052, 1071–72 (N.D. Cal. 2017).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:22-cv-05617-JAK (AFMx) | Date | May 22, 2023 |
| Title | Brent Scruggs v. Mars, Incorporated | | |

California law imposes a broad prohibition on misbranding food, and uses language that, for the most part, is the same as what is in the FDCA. The Sherman Law, Cal. Health & Safety Code §§ 109875 *et seq.*, provides that food is deemed misbranded "if its labeling is false or misleading in any particular." *Id.* § 110660. It also incorporates by reference "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the [FDCA]," as California food labeling regulations. *See id.* § 110100(a).

In light of these provisions, Plaintiffs' claims will "not fail on preemption grounds if the requirements they seek to impose are either identical to those imposed by the FDCA and the NLEA amendments or do not involve claims or labeling information of the sort described in sections 343(r) and 343(q)." *Chacanaca v. Quaker Oats Co.*, 752 F.Supp.2d 1111, 1119 (N.D. Cal. 2010).

       b)     Application

Defendant argues that the labels on the Product comply with FDA regulations governing the disclosure of artificial flavoring. From this they argue that the Complaint must be dismissed in its entirety. The parties agree that the following provisions of 21 C.F.R. § 101.22 apply to this issue:

    (i) If the label, labeling, or advertising of a food makes any direct or indirect representations with respect to the primary recognizable flavor(s), by word, vignette, e.g., depiction of a fruit, or other means, or if for any other reason the manufacturer or distributor of a food wishes to designate the type of flavor in the food other than through the statement of ingredients, such flavor shall be considered the characterizing flavor and shall be declared in the following way:

    . . .

        (2) If the food contains any artificial flavor which simulates, resembles or reinforces the characterizing flavor, the name of the food on the principal display panel or panels of the label shall be accompanied by the common or usual name(s) of the characterizing flavor, in letters not less than one-half the height of the letters used in the name of the food and the name of the characterizing flavor shall be accompanied by the word(s) "artificial" or "artificially flavored", in letters not less than one-half the height of the letters in the name of the characterizing flavor, e.g., "artificial vanilla", "artificially flavored strawberry", or "grape artificially flavored".

        (3) Wherever the name of the characterizing flavor appears on the label (other than in the statement of ingredients) so conspicuously as to be easily seen under customary conditions of purchase, the words prescribed by this paragraph shall immediately and conspicuously precede or follow such name, without any intervening written, printed, or graphic matter, except:

            (i) Where the characterizing flavor and a trademark or brand are presented together, other written, printed, or graphic matter that is a part of or is associated with the trademark or brand may intervene if the required words are in such relationship with the trademark or brand as to be clearly related to the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:22-cv-05617-JAK (AFMx) | Date | May 22, 2023 |
|---|---|---|---|
| Title | Brent Scruggs v. Mars, Incorporated | | |

characterizing flavor . . . .

Defendant contends the front and back labels comply with 21 C.F.R. § 101.22(2) because the word "CINNAMON" is "accompanied by" the words "Artificially Flavored" in a sufficiently large font size. Dkt. 14-1 at 13-14. Defendant further argues that the prohibition on any "written, printed, or graphic matter" "intervening" between the "name of the characterizing flavor" and the words "Artificially Flavored" does not apply because the word "CINNAMON" and the image of Cinnamon are "presented together" with the ALTOIDS® trademark. *Id.* at 14-15. It further contends that "other written, printed, or graphic matter that is a part of or is associated with the trademark or brand" is presented in such a way that it is clear that the term, "Artificially Flavored," relates to "CINNAMON." *Id.* at 14. Defendant contends that there is nothing else in the label other than "CINNAMON" to which "Artificially Flavored" could relate. Dkt. 18 at 6-7.

Plaintiff responds that "accompanied by" means "conjoined, read as one phrase," "immediately next to" or "adjacent to," based on the examples provided in the regulation: "artificial vanilla," "artificially flavored strawberry," and "grape artificially flavored." Dkt. 17 at 11, 14 (emphasis omitted). Plaintiff also contends that Defendant has conceded implicitly that "CINNAMON" is not "accompanied by" "Artificially Flavored" because Defendant argues that the white space and "gold swirl" between the words are permitted under 21 C.F.R. § 101.22(3)(i). *Id.* at 11-12.   Plaintiff also contends that the exception in 21 C.F.R. § 101.22(3)(i) is not met because the intervening material is not associated with the ALTOIDS® trademark. *Id.* at 12-13.

In connection with this Motion, it cannot be determined as a matter of law, i.e., without the development of the factual record, that the requirements of the exception in 21 C.F.R. § 101.22(3)(i) have been satisfied. *First*, Defendant does not explain either the meaning of "the characterizing flavor and a trademark or brand are presented together," or how the label does so. *Second*, there is not presently sufficient evidence to show that the golden swirl is "a part of or is associated with the trademark or brand." Defendant's conclusory assertion that that the golden swirl is part of the "product's trade dress" is not sufficient. Nor is it appropriate, based on the present record, to determine whether "Artificially Flavored" is "clearly related" to the flavor cinnamon. The font and location of "Artificially Flavored" in relation to the Cinnamon Representations mirrors that of the Product's weight, which describes the entire Product. "Artificially Flavored" could be construed as stating that the product as a whole contains one or more artificial flavors other than cinnamon (e.g., mint) or in addition to natural cinnamon. The term "Artificially Flavored" is closer to the images of mint leaves than to the image of cinnamon sticks. For these reasons, it cannot be determined based on the present record that, as a matter of law, the Product label complies with 21 C.F.R. § 101.22(3). Therefore, the Motion is **DENIED** as to preemption.

In light of the foregoing, it is unnecessary to determine whether the Cinnamon Representations are "accompanied by" the required words in the meaning intended by 21 C.F.R. § 101.22(2), for the purpose of determining if Plaintiff's state claims are preempted. However, because one basis for Plaintiff's UCL claim is that the label violates § 101.22(i)(2) (Dkt. 1 at ¶ 70), that issue is addressed.

Neither party has identified a case that defines "accompanied by." Plaintiff's argument that "accompanied by" means "adjacent to" is unpersuasive because that would make superfluous the requirement of no intervening material in § 101.22(3). However, Defendant has not cited any case in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:22-cv-05617-JAK (AFMx) | Date | May 22, 2023 |
|---|---|---|---|
| Title | Brent Scruggs v. Mars, Incorporated | | |

this field, in which the words "Artificially Flavored" are located as far from the name of the flavor as they are on the label of the Product. Moreover, the words "Artificially Flavored" are identical in size and style, and their location is parallel, to the words "NET WT 1.76 OZ (50g)." Because 1.76 oz is the weight of the mints, and not the weight of any cinnamon flavoring, it follows that the words "Artificially Flavored" could also be read to accompany "mints" and not "cinnamon."

Whether the design of the label of the Product makes it sufficiently clear that "Artificially Flavored" is necessarily associated with the Cinnamon Representations cannot be determined on the present record. Accordingly, Defendant has not presently shown that the label of the Product complies with § 101.22(i)(2) as a matter of law. Further, the Complaint plausibly alleges a violation of § 101.22(i)(2) as a basis for the UCL claim.

      2.    <u>The Safe Harbor Doctrine</u>

If state or federal law "has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination" by recognizing an action under the UCL, FAL or CLRA. *Cel-Tech Comm's, Inc. v. L.A. Cellular Tele. Co.*, 20 Cal. 4th 163, 182 (1999); *see also Ebner v. Fresh*, 838 F.3d 958, 963 (9th Cir. 2016). Under the safe harbor doctrine, "[w]hen specific legislation provides a 'safe harbor,' plaintiffs may not use the general unfair competition law to assault that harbor." *Cel-Tech*, 20 Cal. 4th at 182. However, as the California Supreme Court has explained:

> There is a difference between (1) not making an activity unlawful, and (2) making that activity lawful . . . . Acts that the Legislature has determined to be lawful may not form the basis for an action under the unfair competition law, but acts may, if otherwise unfair, be challenged under the unfair competition law even if the Legislature failed to proscribe them in some other provision.

*Id.* at 183; *see also Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1167 (9th Cir. 2012) ("[T]o fall under a safe harbor, the omission of the annual [fee] disclosure from Defendants' advertisements must be expressly permitted by some other provision. It is not enough if [federal law] merely fail[s] to prohibit such an omission.").

Defendant contends that the FDA expressly permits artificially flavored cinnamon to be declared in the manner that appears on the label of the Product. Dkt. 14-1 at 16. Because the Sherman Law adopts all FDA regulations as state ones, Defendant argues that California expressly permits the Defendant's conduct, which makes it fair as a matter of law. *Id.* at 16-17. For the reasons discussed above, Defendant has not shown that the FDA expressly permits the label at issue here as a matter of law. Because the label is not fair as a matter of law, the Motion is **DENIED** as to the safe harbor doctrine.

      3.    <u>Failure to State a Claim Under the CLRA, UCL and FAL</u>

It is undisputed that the CLRA, UCL and FAL claims "are governed by the 'reasonable consumer' test." *See Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). To prevail on these claims, Plaintiff "must show that members of the public are likely to be deceived." *Id.* (internal quotation marks and citation omitted). "This requires more than a mere possibility that [the Products'] label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Ebner*,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:22-cv-05617-JAK (AFMx) | Date | May 22, 2023 |
|---|---|---|---|
| Title | Brent Scruggs v. Mars, Incorporated | | |

838 F.3d at 965 (internal quotation marks and citation omitted). "Rather, the reasonable consumer standard requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* (internal quotation marks and citation omitted). Plaintiff is not required to show that the challenged representation is false. A representation that "although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public," may be actionable. *Williams*, 552 F.3d at 938 (internal quotation marks and citation omitted). The reasonable consumer standard raises questions of fact that are appropriate for resolution on a motion to dismiss only in "rare situation[s]." *Id.* at 939.

Defendant argues that the Complaint fails to state a claim under the UCL, CLRA and FAL because it does not plausibly allege that a reasonable consumer is likely to be deceived by the label. Dkt. 14-1 at 17. Defendant argues that courts have consistently held that it is not reasonable for a consumer to maintain a belief that is affirmatively disavowed by the front label of a product, particularly when there is no affirmative misrepresentation. *Id.* at 18. Defendant further argues that if the front label is ambiguous, a reasonable consumer would examine the ingredient list. *Id.* Defendant contends that because the words "Artificially Flavored" appear to the left of the word "CINNAMON" and the depiction of cinnamon sticks, no reasonable consumer would believe that the product contains natural cinnamon. *Id.* at 18-19. It also contends that if there were any ambiguity, it would be resolved by the ingredient list, which does not include natural cinnamon. *Id.*

Plaintiff argues that the Cinnamon Representations deceive consumers by causing them to believe that the Product contains *some* real cinnamon and that this is not dispelled by stating, "Artificially Flavored" in "small, different colored font, and spatially disconnected from the word 'Cinnamon' and the cinnamon sticks." Dkt 17 at 19 (emphasis omitted). Plaintiff argues that whether a reasonable consumer is likely to understand the "Artificially Flavored" qualifier to apply to cinnamon, or even see the words "Artificially Flavored," are questions of fact. *Id.* Plaintiff also contends that a consumer "can plausibly believe that the Product contains cinnamon, and some artificial flavors, such as an artificial mint flavor." *Id.* at 18. Plaintiff adds that, even if a reasonable consumer is not likely to be deceived, the UCL claim survives because the label on the Product violates FDA regulations. *Id.* at 23.

Plaintiff's argument that the use of a word and image to describe a product's flavor is always deceitful when the product contains no natural flavoring, is both preempted by the FDA regulations and barred by the safe harbor doctrine. The FDA expressly permits the use of such words and images when specific regulations are followed. As discussed above, however, based on the current record, the placement, color and font size of "Artificially Flavored" compared to the word "CINNAMON" and the depiction of cinnamon sticks, could cause a reasonable consumer to find the meaning ambiguous. Although a reasonable consumer may not believe that the Product contains only natural flavors, such a consumer could reasonably believe that the Product contains both real cinnamon and artificial flavoring. Therefore, Defendant's contention that the front label "affirmatively dispel[s]" any belief that the Product contains cinnamon is unpersuasive at this stage of the proceedings. Further, as Plaintiff notes, a manufacturer may not "mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception." *Williams*, 552 F.3d at 939.

Defendant contends that even if the front label is ambiguous, it is not "so misleading that a reasonable consumer – who had a question . . . would not be expected to look at the full packaging for the answer, which was clearly and correctly provided on the rear label." *Culver v. Unilever U.S., Inc.*, No. CV 19-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:22-cv-05617-JAK (AFMx) | Date | May 22, 2023 |
|----------|--------------------------|------|--------------|
| Title | Brent Scruggs v. Mars, Incorporated | | |

9263-GW-RAOx, 2021 WL 2943937 at *1 (C.D. Cal. June 14, 2021), *appeal dismissed*, No. 21-55732, 2021 WL 6424469 (9th Cir. Dec. 29, 2021). Defendant contends that, because the front label includes the words "Artificially Flavored," and does not state that the Product is also naturally flavored, a reasonable consumer would likely read the ingredient list before concluding that the Product contains cinnamon. In *Culver*, the plaintiff argued that a mustard label featuring the words "Paris," "Depuis 1747" and "Que Maille" misled him into believing that the mustard was made in France. *Id*. at *7. The court found that each of the words were either part of the defendant's trademarks or accurately referred to the history of the Maille brand, which was founded in Paris in 1747 by Antoine-Claude Maille. *Id*. at *8-9. The circumstances here are different. The Cinnamon Representations are not part of Defendant's trademark and do not describe some aspect of the ALTOIDS® brand.

The other cases on which Defendant relies are also distinguishable. *Moore v. Trader Joe's Co.*, 4 F.4th 874 (9th Cir. 2021) held that a reasonable consumer would not be misled by the words "100% New Zealand Manuka Honey" to believe that the honey was derived solely from Manuka flower nectar. The decision relied on three "key contextual inferences" none of which is present here. *Id*. at 883. *First*, a "reasonable honey consumer would know that it is impossible to produce honey that is derived exclusively from a single floral source." *Id*. There is not a sufficient basis at this stage to conclude that a reasonable consumer would know that it would not be possible for a mint to contain cinnamon. *Second*, the low cost of the honey could lead to an inference of a relatively lower concentration of honey derived from Manuka. *Id*. at 884. In contrast, there is no showing that cinnamon is expensive. *Third*, the front label prominently displayed the rating of the honey on a grading scale that reflects the concentration derived from Manuka. *Id*. at 884-85. Here, the front label does not state the percentage of cinnamon in the Product.

Defendant also cites *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 475 F. App'x 113 (9th Cir. 2012), which found that "no reasonable consumer is likely to think that 'Original Vanilla' refers to a natural ingredient when that term is adjacent to the phrase, 'Artificially Flavored.' " *Id*. at 115. In that case, the words "Artificially Flavored" immediately preceded the word "Vanilla." *See* Dkt. 17 at 15. As previously noted, here, it is not clear that "Artificially Flavored" is "adjacent to" the Cinnamon Representations. Defendant also relies on *Varela v. Walmart, Inc.*, No. CV 20-4448-GW-KSx, 2021 WL 2172827 (C.D. Cal. May 25, 2021). It rejected the argument that labeling a product "Vitamin E Skin Oil" deceived consumers into believing that Vitamin E oil is the primary or exclusive ingredient. *Id*. at *11. There, however, the front label also prominently stated "with Keratin" and the actual quantity of Vitamin E in the product. *Id*. at *4-5. Here, the label does not state the percentage of cinnamon and, unlike the plaintiff in *Carrea*, Plaintiff contends that a reasonable consumer would believe the Product contains some cinnamon, not that cinnamon is the primary ingredient.

The Complaint plausibly alleges that a reasonable consumer could be deceived by the Product's label. Therefore, the Motion is **DENIED** as to Defendant's contention that a reasonable consumer is not likely to be deceived by it.

4.      Failure to State a Claim for Breach of Warranty

The Complaint alleges that "Defendant has expressly warranted on the Product's front label that it contains cinnamon through the Cinnamon Representations." Dkt. 1 ¶ 77. Under California law, an express warranty is created by:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:22-cv-05617-JAK (AFMx) | Date | May 22, 2023 |
|---|---|---|---|
| Title | Brent Scruggs v. Mars, Incorporated | | |

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

Cal. Com. Code § 2313(1). Accordingly, Plaintiff must sufficiently allege that "(1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *Weinstat v. Dentsply Int'l., Inc.*, 180 Cal. App. 4th 1213, 1227 (2010) (internal quotation marks omitted).

The implied warranty of merchantability may be violated if (1) the product is not "fit for the ordinary purposes for which such good [is] used," or (2) does not "[c]onform to the promises or affirmations of fact made on the container or label if any." Cal. Com. Code § 2314(2); *see, e.g.*, *Hauter v. Zogarts*, 14 Cal. 3d 104, 118 (1975). Where, as here, this claim rests on the latter theory, the claim "rises and falls" with the express warranty claim. *Kennard v. Kellogg Sales Co.*, No. 21-CV-07211-WHO, 2022 WL 4241659 at *8 (N.D. Cal. Sept. 14, 2022); *see also Hendricks v. StarKist Co.*, 30 F.Supp.3d 917, 933 (N.D. Cal. 2014) (applying the same analysis to the "[c]onform to the promises or affirmations of fact" analysis as to the express warranty analysis); *see also Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1096 (N.D. Cal. 2017).

Defendant argues that express warranty claim fails because the label lacks a "specific and unequivocal" statement that it contains naturally flavored cinnamon. Dkt. 14-1 at 19 (quoting *Kennard*, 2022 WL 4241659 at *7 (N.D. Cal. Sept. 14, 2022). However, *Kennard* summarily rejected the warranty claims because no reasonable consumer could be misled by the label, which the court found to be, at most, ambiguous. *Id.* Here, it has been determined that a reasonable consumer could be misled by the Product's label. Therefore, the express warranty claim is sufficiently alleged. *See Hunt v. Sunny Delight Beverages Co.*, No. 8:18-CV-00557-JLS-DFM, 2018 WL 4057812 at *5 (C.D. Cal. Aug. 23, 2018).

Defendant also contends that a depiction of the flavor that is a characteristic of the product is not a statement regarding its ingredients, but a statement about its taste. Dkt. 14-1 at 19-20. Courts in this district have held that labels "which only indicate flavor rather than composition, cannot serve as the basis for an express warranty." *In re Quaker Oats Maple & Brown Sugar Instant Oatmeal Litig.*, No. CV161442PSGMRWX, 2017 WL 4676585 at *8 (C.D. Cal. Oct. 10, 2017); *see also id.* ("Had Plaintiffs alleged that the Products did not *taste* like maple syrup, a breach of an express warranty might be plausible. But the complaint does not allege that the Products contained an express assertion that maple syrup was an *ingredient*, which would be required for an express warranty claim under these alleged facts."). However, as stated above, Plaintiff has sufficiently alleged that a reasonable consumer could be misled into believing that cinnamon is an ingredient in the Product.

Because the Complaint sufficiently alleges a claim for breach of express warranty, the Motion is **DENIED** as to the warranty claims.

5.    Equitable Jurisdiction

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:22-cv-05617-JAK (AFMx) | Date | May 22, 2023 |
|---|---|---|---|
| Title | Brent Scruggs v. Mars, Incorporated | | |

Defendant argues that Plaintiff has not established that he lacks an adequate remedy at law and, therefore, all claims for equitable relief must be dismissed. The Complaint is without any allegation that damages would be insufficient to remedy Plaintiff's injury. The issue, therefore, is whether Plaintiff can amend the Complaint and plausibly allege that the remedies at law are inadequate.

Defendant argues that *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020) is dispositive. *Sonner* dismissed the plaintiff's claims for equitable restitution under the UCL and CLRA because the plaintiff failed to allege that legal remedies were inadequate, and she conceded that she sought the same amount in equitable restitution as damages to compensate her for the same past harm. *Id.* at 844. Plaintiff does not contend that he seeks restitution for a different harm or in a greater amount than he seeks to receive in damages. Plaintiff appears to concede that damages, and some form of injunctive relief would be an adequate remedy. However, he contends that the issues presented by *Sonner* are not appropriate for resolution on a motion to dismiss. Plaintiff argues that he can plead claims for restitution in the alternative "to prevent prejudice to Plaintiff in the event that these proceedings later reveal that his legal remedies are inadequate." Dkt. 17 at 29. District courts in this circuit have rejected that argument, finding that a plaintiff must plead inadequate legal remedies in the operative pleadings to allege claims for equitable remedies. *See Rivera v. Jeld-Wen, Inc.*, No. 21-CV-01816-AJB-AHG, 2022 WL 3702934 at *12-13 (S.D. Cal. Feb. 4, 2022) (collecting cases).

For the foregoing reasons, because as presently alleged, restitution would not provide a remedy distinct from what would be available through the recovery of damages, the Motion is **GRANTED** as to any claims for equitable restitution. The Motion is **GRANTED** as to those claims, and they are **DISMISSED WITHOUT PREJUDICE**.[2]

As to injunctive relief, Plaintiff contends that *Sonner* is limited to equitable restitution. District courts have rejected this argument because *Sonner* held that a plaintiff seeking any equitable relief must allege that damages would be an insufficient remedy. *See Shay v. Apple Inc.*, No. 20CV1629-GPC(BLM), 2021 WL 1733385 at *3 (S.D. Cal. May 3, 2021) (collecting cases).

Unlike equitable restitution, which would provide a retrospective remedy that is already available in the form of compensatory damages, an injunction would provide a remedy for ongoing and future harm. Therefore, Plaintiff could attempt to amend the Complaint to allege that legal remedies would be an inadequate remedy for future harm. *See, e.g.*, *Zeiger v. WellPet LLC*, 526 F.Supp.3d 652, 687 (N.D. Cal. Feb. 26, 2021) ("Assuming that *Sonner* applies to injunctive relief, Zeiger has shown that monetary damages for past harm are an inadequate remedy for the future harm that an injunction under California consumer protection law is aimed at. Zeiger's remedy at law, damages, is retrospective. An injunction is prospective."). Nevertheless, for the reasons stated below, Plaintiff lacks standing to pursue injunctive relief.

6.   Standing for Injunctive Relief

---

[2] *See Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1313 (9th Cir. 2022) (the district court lacked jurisdiction over the plaintiff's UCL claim due to the plaintiff's time-barred CLRA claim but reversing the grant of summary judgment because the UCL claim should have been dismissed without prejudice for lack of equitable jurisdiction).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:22-cv-05617-JAK (AFMx) | Date | May 22, 2023 |
|---|---|---|---|
| Title | Brent Scruggs v. Mars, Incorporated | | |

Defendant argues that Plaintiff does not have standing to seek injunctive relief because the Complaint fails sufficiently to allege a risk of future harm. Dkt. 14-1 at 21. Defendant argues that Plaintiff can readily ascertain whether the Product is artificially flavored by looking at either side of the label before deciding whether to purchase it again. *Id.* Plaintiff contends that Defendant is essentially arguing that injunctive relief is not available in consumer class actions. Dkt. 17 at 29. Plaintiff also contends that Defendant's suggestion that consumers "ferret out clarifications on a product's back label" is inconsistent with typical consumer behavior and wrongly places the burden of avoiding future misunderstanding on consumers. *Id.* at 30. Plaintiff also contends that Defendant's arguments are foreclosed by *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018). *Id.*

*Davidson* held that "a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase." *Id.* at 969 (citation omitted). Thus, the plaintiff had standing to assert a claim for injunctive relief because she faced a threat of imminent harm by not being able to rely on a product's labels in the future, notwithstanding that she had learned that the label at the time was false. *Id.* at 967. As *Davidson* explained, "[k]nowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future," and "[i]n some cases, the threat of future harm may be the consumer's plausible allegations that she is unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to." *Id.* at 969-70.

The Complaint alleges that Plaintiff would purchase the Product again if it actually contained cinnamon, but he lacks personal knowledge as to Defendant's specific business practices relating to the Product. Dkt. 1 ¶ 10. However, Plaintiff does not need any special knowledge to decide whether to purchase the Product again. Instead, he can simply confirm whether cinnamon is listed as an ingredient on the back label. *See Stewart v. Kodiak Cakes*, *LLC*, 537 F. Supp. 3d 1103, 1127 (S.D. Cal. 2021) (no standing because "Plaintiffs can check the nutrition facts or ingredient labeling to assess if the products still contain preservatives"); *Cordes v. Boulder Brands USA, Inc.*, No. CV 18-6534 PSG (JCx), 2018 WL 6714323 at *4 (C.D. Cal. Oct. 17, 2018) ("[N]ow that Plaintiff is on notice about potential underfilling, he could easily determine the number of pretzels in each package before making a future purchase by simply reading the back panel . . . or he could feel the bag."); *Matic v. United States Nutrition, Inc.*, No. CV 18-9592 PSG (AFMx), 2019 WL 3084335 at *8 (C.D. Cal. Mar. 27, 2019) ("Plaintiff is now aware that he can find out how much protein powder is in Defendant's containers by simply looking at the label.").

This case is distinguishable from *Davidson*, where the plaintiff could not determine whether a wipe was truly "flushable" as advertised at the time of a future purchase. *See also Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US), LLC*, No. 20-CV-09077-JSW, 2021 WL 3524047 at *5 (N.D. Cal. Aug. 6, 2021) (threat of harm even if plaintiff knows "some synthetic ingredients" because "she cannot differentiate between synthetic and natural ingredients"); *Prescott v. Bayer Healthcare LLC*, No. 20-CV-00102-NC, 2020 WL 4430958 at *7 (N.D. Cal. July 31, 2020) ("[A]bsent an encyclopedic knowledge of sunscreen active ingredients, Plaintiffs may not be able to truly know whether a sunscreen is truly 'mineral-based.'").

Plaintiff has not sufficiently alleged a risk of future harm and cannot do so as a matter of law. Therefore,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:22-cv-05617-JAK (AFMx) | Date | May 22, 2023 |
| Title | Brent Scruggs v. Mars, Incorporated | | |

the Motion to Dismiss is **GRANTED WITH PREJUDICE** as to Plaintiff's claims for injunctive relief.

**V.      Conclusion**

For the foregoing reasons, the Motion is **GRANTED IN PART AND DENIED IN PART**. The Motion is **DENIED** as to the 1st, 4th and 5th causes of action to the extent they seek damages. The Motion is **GRANTED** as to the 2nd, 3rd and 6th causes of action, and as to claims for equitable relief under the 1st cause of action. All claims for equitable restitution are **DISMISSED WITHOUT PREJUDICE** to Plaintiff filing them in the appropriate state court. All claims for injunctive relief are **DISMISSED WITH PREJUDICE**. Within two weeks of the issuance of this Order, Plaintiff shall file any amended complaint. With respect to the claims for equitable restitution, this Order is stayed for a period of 30 days to permit Plaintiff to re-file those claims in an appropriate state court if he elects to do so.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer      tj